IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA ANN SHUPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-10 Erie |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of ) | |
| Social Security ) | |
| ) | |
| Defendant. ) | |

AMBROSE, U.S. Senior District Judge

# **OPINION AND ORDER**

I. Synopsis

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Benefits ("SSI") pursuant to the Social Security Act ("Act"). Plaintiff alleges disability beginning June 1, 2009. ECF No. 14-5, 5. After the state agency denied Plaintiff's applications, her case was advanced to the hearing level as part of a special program established to test modifications to the disability determination process. ECF No. 29, 2. *Id.* On September 27, 2012, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). ECF No. 14-5, 5. On November 15, 2012, the ALJ found that Plaintiff is not disabled under the Act. *Id.* at 32. After exhausting all administrative remedies, Plaintiff filed this action.

Pending before the Court are cross-motions for summary judgment. ECF Nos. [16] (Plaintiff) and [28] (Defendant). Both parties filed briefs in support of their motions. ECF Nos.

[17] (Plaintiff) and [29] (Defendant). The issues are now ripe for review. After careful consideration of the submissions of the parties, and based on my Opinion as set forth below, Defendant's Motion, ECF No. [28], is granted and Plaintiff's Motion, ECF No. [16] is denied.

II. Legal Analysis

A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "[m]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). While the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for social security benefits, a plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520(a); 416.920(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520; 416.920. A Claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (Steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (Step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

B. Plaintiff's Motion

1. Listing 12.04

Plaintiff argues that the ALJ erred in failing to find that Plaintiff meets Listing 12.04 and thus is disabled *per se*. ECF No. 17, 17-18.

At step three of the five-step sequential analysis, a claimant seeking benefits may establish disability if she meets or medically equals a listed impairment. 20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii). An applicant is *per se* disabled if her impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. *Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000).

The Regulations explain that Listing 12.04—Affective Disorders is "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04. The required level of severity for this disorder is met when the requirements in both [paragraphs] A and B [of the listing] are satisfied, or when the requirements in part C of the listing are satisfied." *Id.* Thus, to fall within the listed impairment of section 12.04 (Affective Disorders), a plaintiff must show:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
> a. Anhedonia or pervasive loss of interest in almost all activities; or
> b. Appetite disturbance with change in weight; or
> c. Sleep disturbance; or
> d. Psychomotor agitation or retardation; or
> e. Decreased energy; or
> f. Feelings of guilt or worthlessness; or
> g. Difficulty concentrating or thinking; or
> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
> a. Hyperactivity; or
> b. Pressure of speech; or
> c. Flight of ideas; or
> d. Inflated self-esteem; or
> e. Decreased need for sleep; or
> f. Easy distractibility; or
> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
> h. Hallucinations, delusions or paranoid thinking;
>
> or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.04.

In order for a claimant to show that her impairments medically equal a listing, she must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original), *superseded by statue on other grounds as stated in Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [such that t]he listings

define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.' " *Id.* at 532. "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* Accordingly, "[a]n impairment that manifests only some of [the specified medical] criteria, no matter how severely, does not qualify." *Id.* at 530. A claimant bears the burden of proving that she meets or medically equals a listing. *Id.* at 530-31; *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

Specifically, Plaintiff argues that the ALJ should have found that she met listing 12.04 based on her testimony and the evidence of record because her depression is severe (paragraph A criteria), and she has marked restrictions on her activities of daily living and in maintaining concentration, persistence, or pace because she has "severe sleep disruption/somnolence" (paragraph B criteria). ECF No. 17-18. Plaintiff also argues that her records reflect exacerbated symptoms when significant adjustments were made to her medication, thus establishing periods of decompensation. *Id.* at 19. I disagree.

Here, while the ALJ found that Plaintiff's depression is severe, ECF No. 14-5, 9-10, he concluded that Plaintiff did not satisfy the paragraph B criteria because he found Plaintiff had merely mild restrictions in the activities of daily living and social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation. *Id.* at 10. With regard to Plaintiff's activities of daily living, the ALJ explained that Plaintiff's mental treatment records from Safe Harbor Behavioral Center show "intermittent episodes of tearfulness and feeling[s] of worthlessness" but that Plaintiff "manages to look after her elderly father and essentially does all of the housework." *Id.* The ALJ also relied on the opinion of the

consultative examiner who found that Plaintiff is able to maintain her activities of daily living. *Id.* (citing Exhibit C-28F at 7). With regard to concentration, persistence, or pace, the ALJ found Plaintiff has moderate difficulties in carrying out detailed instructions or responding appropriately to changes in the work setting based on the opinions of the state agency and consultative examiners. *Id.* (citing Exhibits C-1A, C-2A, and C-27A). As for episodes of decompensation, because he found "no evidence of psychiatric hospitalizations, delusions, or psychosis throughout the relevant time period at issue," the ALJ concluded that Plaintiff has experienced no episodes of decompensation. *Id.* (citing Exhibits C-1A, C-2A, C-23F, C-28F, C-32F, and C-38F). After carefully reviewing the record, I find there is substantial evidence for the ALJ's finding that Plaintiff does not meet or medically equal listing 12.04, and I find no error.

2. The Medical Evidence

Plaintiff also argues that the ALJ erred in evaluating the medical evidence. Specifically, Plaintiff asserts that the ALJ should have given the opinions of doctors DeLullo, Lubahn, and the medical staff at Safe Harbor Behavioral Health controlling weight. ECF No. 17, 18. Plaintiff further argues that in evaluating this medical evidence the ALJ "substituted his own subjective opinion as to the credibility of the claimant's stated symptoms." *Id.*

Regardless of the source, an ALJ must evaluate every medical opinion received, state the weight he assigns the opinion, and articulate his reasons. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c). Generally, an ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. *Id.* §§ 404.1527(c)(1); 416.927(c)(1). When weighing medical opinions, an ALJ should consider all of the following factors: the examining relationship, the treatment relationship (the length of the treatment relationship and the frequency of examinations as well as the nature and extent of the treatment relationship),

supportability, consistency, specialization and other factors brought to the ALJ's attention or which tend to support or contradict an opinion. *Id.* §§ 404.1527(c); 416.927(c).

An ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Moreover, "the more consistent an opinion is with the record as a whole, the more weight [an ALJ generally] will give to that opinion." *Id.* §§ 404.1527(c)(4); 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r of Soc. Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot

reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

An ALJ must set forth his reasons for crediting or discrediting relevant or pertinent medical evidence. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121-22 (3d Cir. 2000). "Although the ALJ 'may properly accept some parts of the medical evidence and reject other parts . . . he must consider all of the evidence and give some reason for discounting the evidence he rejects.' " *Lanza v. Astrue*, No. 08-301, 2009 WL 1147911, at *7 (W.D. Pa. Apr. 28, 2009) (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' " *Burnett*, 220 F.3d at 121-22 (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

After careful review of the record, I find no error in the ALJ's analysis of the medical evidence, and I find substantial evidence supports the ALJ's finding.

With regard to Dr. DeLullo, M.D., an orthopedist who treated Plaintiff for shoulder, neck, and heel pain, the ALJ explained that Dr. DeLullo's own clinical findings do not document a significant loss of mobility or support his opinion that Plaintiff is unable to work. ECF No. 14-5, 13-14 (citing Exhibits C-20F/6, C-33F, C-35F/8). The ALJ also correctly noted that because the issue of whether an individual is disabled is reserved for the Commissioner, he was not obligated to give Dr. DeLallo's opinion on disability controlling weight. *Id.*

Dr. Lubahn, M.D. performed a successful right carpal tunnel release on Plaintiff in September 2010. ECF No. 14-5, 13 (citing Exhibit C-31F/84). The ALJ cites Dr. Lubahn's treatment records to question unexplained inconsistencies in Plaintiff's alternating grip strength tests and to explain that despite Dr. Lubahn's suspicion that Plaintiff's right hand issues and

wrist pain was caused by "scapholunate ligament instability or a triangular fibrocartilage complex tear," MRI results revealed "merely slight nonspecific changes" to her ganglion cyst. *Id.* The ALJ further stated that "the medical sources of record have not correlated a nexus between the claimant's right hand symptoms and the physical acts of standing and sitting." *Id.* (citations omitted). Moreover, as Defendant points out, the record does not contain a medical opinion from Dr. Lubahn regarding Plaintiff's ability to engage in work-related activities, and Plaintiff has not identified a medical opinion disregarded by the ALJ--the transcript pages cited by Plaintiff in her brief merely refer to Dr. Lubahn's treatment records. ECF No. 17, 18 (citing transcript pages 787-852 [Exhibit C-11F], 964-1034 [Exhibit C-19F], and 1643-1693 [Exhibit C-22F]). Accordingly, I find the ALJ did not err in his consideration of Dr. Lubahn's treatment notes.

Similarly, the staff at Safe Harbor Behavioral Health ("Safe Harbor") did not opine on Plaintiff's functional abilities, as alleged by Plaintiff. *See* ECF No. 17, 18. The ALJ considered Plaintiff's treatment notes from Safe Harbor when considering what weight to assign to the medical opinions of Dr. Bailey, the consultative psychologist who performed an examination in June 2011, and Dr. Diorio, the State agency psychologist, who reviewed the mental health evidence of record in June 2011. ECF No. 14-5, 8, & 14-16. After careful review, I find that the ALJ conducted a comprehensive assessment of the medical evidence, carefully considered the treatment notes from Safe Harbor vis-à-vis the opinions rendered by Dr. Bailey and Dr. Diorio, and thoroughly explained that he gave significant weight to Dr. Bailey and Dr. Diorio's medical opinions because "the Safe Harbor treatment records [] show only moderate levels of mental symptoms." *Id.* 14-16. Because substantial evidence supports the ALJ's conclusion, I find the ALJ did not error in this regard.

3. Credibility

Plaintiff also argues that the ALJ failed to properly assess her credibility. ECF No. 17, 20.

An ALJ is charged with the responsibility of determining credibility. *Smith v. Califano*, 637 F.2d 968, 969 & 972 (3d Cir. 1981). The ALJ must consider "the entire case record" in determining the credibility of an individual's statements. SSR 96-7p. An ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.* In evaluating whether a plaintiff's statements are credible, the ALJ will consider evidence from treating, examining, and consulting physicians, observations from agency employees, and other factors such as the claimant's daily activities, descriptions of the pain, precipitating and aggravating factors, type, dosage, effectiveness, and side effects of medications, treatment other than medication, and other measures used to relieve the pain. 20 C.F.R. § 416.929(c); SSR 96-7p. The ALJ also will look at inconsistencies between the claimant's statements and the evidence presented. *Id.* I must defer to the ALJ's credibility determinations unless they are not supported by substantial evidence. *Smith*, 637 F.2d at 972; *see also Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975).

Here, the ALJ found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible because he found, *inter alia*, that (i) Plaintiff engages in routine and regular activities of daily living, such as caring for her elderly father, attending to household chores, and travel, and (ii) the severity and intensity of Plaintiff's

reported discomfort is not borne out by the objective diagnostic tests and clinical findings of record. ECF No. 14-5, 12-16; *see also supra* for a discussion of the ALJ's assessment of the medical evidence. After careful consideration, I find substantial evidence supports the ALJ's articulated reasons for his credibility determination. Thus, on this issue, I find no error.

   III. Conclusion

Based on the evidence of record and the briefs filed in support thereof, I find there is substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. As a result, I deny Plaintiff's motion for summary judgment, and I grant Defendant's motion for summary judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA ANN SHUPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 15-10 Erie |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Commissioner of | ) |
| Social Security | ) |
| | ) |
| Defendant. | ) |

AMBROSE, U.S. Senior District Judge

ORDER

AND NOW, this 22nd day of October, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is Ordered that Plaintiff's Motion for Summary Judgment (ECF No. [16]) is DENIED and Defendant's Motion for Summary Judgment (ECF No. [28]) is GRANTED.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
Senior U.S. District Court Judge